### GROTON IRON WORKS v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

(District Court, D. Connecticut. September 15, 1922.)

No. 2345.

1. Pleading ☞367(3), 368—Motion to require separation of causes of action and for more specific statement granted.

A complaint *held* to state more than one cause of action, and a motion to require the causes to be separated and numbered, and for more specific statement of certain items, granted.

2. Pleading ☞367(2)—Province of motion for more specific statement.

A motion to make a complaint more definite and certain will be granted only when the facts to be stated are a material part of the cause of action, but not for the purpose of narrowing the issues to prevent surprise.

At Law. Action by the Groton Iron Works against the United States Shipping Board Emergency Fleet Corporation. On motion by defendant to require causes of action to be separately stated. Granted. Also for more specific statement. Granted in part.

John T. Robinson, of Hartford, Conn., and Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for plaintiff.

Joseph F. Berry and Allan K. Smith, both of Hartford, Conn., and Rushmore, Bisbee & Stern, of New York City, for defendant.

THOMAS, District Judge. This suit is brought by the plaintiff to recover damages for breach of contract.

[1] The defendant has filed two motions, which are directed to the plaintiff's complaint. The first is to order the plaintiff to separate its complaint into different causes of action on which it seeks to hold the defendant responsible, and to state the sums claimed as damages in each cause of action. The second motion is for a more specific statement.

The complaint, though very lengthy, alleges in substance that the defendant entered into a number of contracts with the plaintiff whereby the latter was to construct for the former 12 wooden cargo-carrying hulls of the Ferris type (contract of June 15, 1917, referred to as Exhibit A), six steel cargo-carrying vessels of the Robert Dollar type (contract of August 11, 1917, referred to as Exhibit D), and six steel

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

single-screw cargo-carrying vessels of the Moore and Scott type (contract of April 20, 1918, referred to as Exhibit E).

Each one of these contracts reserved to the defendant the right to order changes in the plans of construction and extras, and to order increases in the wages of laborers engaged on ship construction, and provided that the purchase price of the hulls or vessels should be increased by the amount that their cost to the plaintiff was increased by reason of changes in wages or plans of construction ordered by the defendant.

The plaintiff entered upon the construction of the wooden hulls, completing two and partially completing six prior to September 30, 1918. During the progress of the work the defendant ordered increases in wages and changes in the construction of some of said hulls, and did certain other acts whereby the cost of constructing them was largely increased, for which increases the plaintiff was entitled to compensation, but the defendant failed to pay the plaintiff proper compensation for said increased costs.

On September 30, 1918, the parties entered into another contract, referred to as Exhibit B, whereby Exhibit A was canceled as to the last four hulls to be constructed thereunder, and in consideration of the defendant's agreement to pay the plaintiff increased compensation for the hulls completed or under construction, the plaintiff waived all claims for damages due it on account of breaches occurring prior to September 30, 1918—the defendant, at the same time, agreeing to pay any further increases in cost of construction caused by changes in plans or increases in the cost of labor or materials. The defendant, it is alleged, failed to perform this agreement.

Because of the failure of the defendant to make the payments which were due the plaintiff under the aforesaid contracts, and because of various other defaults by the defendant in the performance of its contracts, the plaintiff was unable to meet the liabilities incurred by it for materials and supplies furnished for use in connection with said contracts and went into the hands of receivers in March, 1919, who operated the plants for over a year.

On March 26, 1920, plaintiff entered into another contract with the defendant, referred to as Exhibit C, canceling the contracts of June 15, 1917, and September 30, 1918, as to three wooden hulls partially completed, and the contract of April 20, 1918, as to three steel hulls. The consideration for the partial cancellation of the contracts of June 15, 1917, and September 30, 1918, was to be the award to the plaintiff of the three uncompleted hulls, one complete Ferris type wooden ship to be selected by the plaintiff from a list furnished by the defendant, one Ferris type hull to be selected in the same manner, and one bill of materials, No. 500, being the full equipment required for said hull. In consideration of the cancellation of the contract of April 20, 1918, as to the last three vessels to be constructed under it, the defendant agreed to pay a greatly increased purchase price for all of the other steel vessels, some of which had already been delivered, and, in addition, the sum of $500,000. The contract also contained numerous other provisions with regard to the rights and obligations of the parties, modifying the provisions of the prior contracts.

Article XII of this contract is entitled "Release." By the provisions

of subdivision 1, the contractor releases the defendant of and from any and all claims and demands, causes of action, etc., which it has against the defendant by reason of Exhibits A, B, C, D, and E, "up to the date hereof, the contractor hereby accepting the agreements and covenants of the owner herein set forth in full settlement, as just compensation and in accord and satisfaction of any and all such claims, demands, causes of action," etc. Subdivision 2 provides as follows:

"(2) The reconciliation of the accounts of the contractor in respect of the construction of wood vessels at the Noank plant with those of the owner, which has been in progress between the receivers and the New York district office of the owner during the past four months, shall be continued with respect to items upon which a reconciliation or agreement has not been reached, and any amount found due to the contractor in respect of any of the hulls (the uncompleted hulls to be paid for on the basis of the degree of completion of each) shall be paid to the contractor, *anything contained in this agreement to the contrary notwithstanding*, in addition to the wood hulls, wood ship, and bill of material No. 500 awarded to the contractor as just compensation for cancellation as provided in article III, paragraph 2 hereof. If any money should be found due the owner by reason of said reconciliation, the amount thereof shall be paid by the contractor to the owner or deducted by the owner from any moneys or credit due the contractor."

The complaint further alleges:

That "the defendant has wholly failed in the doing of the things to be done by it as the consideration for said cancellation (of Exhibits A and B) and the agreement of the defendant contained in said Exhibit C have become worthless to the plaintiff"; that the defendant has in other respects failed to comply with the provisions of the contract of March 26, 1920; that in so far as the contract purports to modify the obligations of the defendant under the previous contracts between the parties there has been a complete failure of consideration; that "the defendant has repeatedly and continuously defaulted in the performance of each and every of the aforesaid contracts (Exhibits A, B, D, and E), and has neglected and refused to carry out each and all of its undertakings contained in said contract, Exhibit C, whereby the plaintiff has been damaged in the sum of $13,000,000."

The defendant contends that it is impossible to tell from the complaint whether the plaintiff is suing for breach of the contract of March 26, 1920, or claims the right to rescind that contract for failure of consideration, and is suing on the previous contracts, and one of the objects of these motions is to compel the plaintiff to make this election. It further contends that by the contract of September 20, 1918, the plaintiff released all claims for breaches of the contract of June 15, 1917, and by the contract of March 26, 1920, it released all its claim of every character arising under any of the previous contracts between the parties; that the complaint alleges a great many breaches of all of the contracts and that the plaintiff should be required to state which of the breaches occurred prior to March 26, 1920, and which subsequently thereto.

The plaintiff contends that the complaint sets forth a single cause of action for the breach of the contract of March 26, 1920, which incorporates all of the prior contracts except in so far as it modifies them, by providing in article XII that:

"This agreement is supplemental to contracts 15 W. H. (Exhibit A), 57 S. C. (Exhibt D), and 225 S. C. (Exhibit E), and the supplements thereto (Exhibit B) and where inconsistent therewith shall be held to govern. Except as

herein otherwise provided, the provisions of the said contracts and supplements thereto shall remain in full force and effect."

It further contends that the release from all claims existing prior to March 26, 1920, provided for in paragraph 1 of article XII of that date, was conditional upon the performance by the defendant of the acts required of it by paragraph 2 of article XII, and that because the defendant not merely failed to do these things, but actively set about to deprive the plaintiff of the benefit intended to be derived by it from the contract of March 26, 1920, the release provisions are not operative. From these premises the plaintiff draws the conclusion that it may sue under the contract of March 26, 1920, not merely for breaches thereof occurring after that date, but also for breaches of the prior contracts occurring before it was entered into.

Unquestionably the plaintiff, in suing for breaches of Exhibits A, B, D and E, occurring after March 26, 1920, must base its cause of action on those contracts as modified by the contract of that date, and it is also true that, as a general rule, numerous breaches of a single contract constitute a single cause of action, which may be stated in one count with a single ad damnum. But I am satisfied that the mere fact that all of the prior contracts were modified by the contract of March 26, 1920, did not consolidate them into one to such an extent that breaches of each of the different contracts, some of them occurring prior to March 26, 1920, can be considered as constituting one cause of action within the meaning of the above rule.

A contrary holding would be equivalent to deciding that an act may be a breach of contract which has not been made at the time of its occurrence. If the plaintiff's contention were sustained, the effect would be to prevent the defendant from testing, by demurrer, the question whether it has been released from all breaches of its contracts with the plaintiff occurring prior to March 26, 1920. I conclude, therefore, that the plaintiff should separately state and number the facts on which it bases its causes of action for the breaches of each of its five contracts with the defendant, and should state which of the breaches of Exhibit A occurred before September 30, 1918, and which of the breaches of Exhibits A, B, D, and E occurred before March 26, 1920, and each cause of action should contain a statement of the amount of damage claimed.

The defendant also seeks by these motions to compel the plaintiff to set forth a great many details as to transactions referred to in the complaint, such, for instance, as the dates of the orders issued by the defendant, increasing the wages to be paid by the plaintiff, and changing the plans of construction, whether they were in writing, by whom given, etc. The defendant regards these details as elements of the plaintiff's cause of action which should be furnished by compulsory amendment. It contends that, because it had many agents in its employ during the time these transactions were taking place, who are no longer employed by it and widely scattered, it cannot ascertain these facts, and that the plaintiff should be required to allege them, so as to narrow the issues and prevent the defendant from being taken by surprise.

The various contracts between the parties provide that the orders

of the defendant requiring the plaintiff to increase wages and changing the plans of construction of the vessels to be built by the plaintiff should be in writing. Unless the orders referred to in the complaint were in writing, they are immaterial, because the plaintiff was not required to comply with them. It is therefore material to the plaintiff's case to allege that the orders were in writing, and the defendant's motion should be granted to that extent. But the same ruling does not apply to the remainder of the motion.

[2] It is well settled that a motion to make a complaint more definite and certain will be granted only when the facts to be stated are a material part of the cause of action, but not for the purpose of narrowing the issues to prevent surprise, as claimed by the defendant. Where, as here, the cause of action is definitely stated, though the statement thereof is wanting in details, the remedy lies in an application for a bill of particulars, and even on such an application a plaintiff should not be compelled to disclose its evidence, as this motion seeks to do, nor to allege facts which are equally within the knowledge of the defendant.

The motion to separately state and number is granted. The motion for a specific statement is granted as to paragraphs I, II, XIV C, XV A, B, C, E, G, and I; also III A and C, IV C, and VIII A, in so far as they require the plaintiff to state whether certain orders given by the defendant were in writing; otherwise denied. And it is so ordered.